IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

MYRA EUNICE,  )
             )
   Plaintiff, )
             )
v.           )   Case No.: CV-01-PT-3155-E
             )
WAL-MART STORES, INC., )
             )
   Defendant. )

**FILED**
APR 23 2002
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA

ENTERED
APR 23 2002

**MEMORANDUM OPINION**

This cause comes to be heard on defendant Wal-Mart Stores, Inc.'s Motion for Summary Judgment filed on March 14, 2002.

**FACTS**

Plaintiff Myra Eunice ("Eunice") is an adult resident citizen of Calhoun County, Alabama. Defendant Wal-Mart Stores, Inc. ("Wal-Mart") is a Delaware corporation with its principal place of business being 701 South Walton Boulevard, Bentonville, Arkansas 72716.

Eunice went to the Oxford, Alabama Wal-Mart store on Saturday, January 27, 2001. Eunice typically shopped at the Oxford Wal-Mart three times per week. On the Saturday in question, Eunice arrived at Wal-Mart at approximately 3:00 P.M. She entered the grocery side of the store and obtained a shopping cart. According to Eunice, the store was well lit and she had no problems seeing in the store.

After entering the grocery section, Eunice went to the produce section of the store, shopped in the area where lunch meats and cheese are located, then walked to the aisle on which dog food is displayed. Eunice spent about forty-five minutes shopping in these areas. During this time she did not hear any pages for clean-up or any problems that required a janitor or

18

maintenance.

Eunice exited the dog food aisle and turned her shopping cart on to the aisle where cat food, mops, and potpourri are displayed. Eunice did not see any customers or Wal-Mart employees on the aisle when she arrived. The aisle appeared to be neat, orderly and well lit. The flooring was light gray tile. Eunice first shopped for cat food on one side of the aisle. She shopped for cat food approximately fifteen minutes. During this activity Eunice had worked her cart about halfway down the aisle. Eunice did not see anything on the floor at this point. She did not hear anything hit the floor. She also did not smell anything.

At the halfway point of the aisle, Eunice pushed her cart to the other side to shop for some potpourri. She pushed her cart close to the shelf. She did not feel anything slippery or rocky like at this point. She did not see any foreign substance on the floor. She also did not smell anything. Facing the shelf, Eunice selected a Wizard and Glade refill and walked a couple of steps to her right to place them into her shopping cart at approximately 4:00 P.M. Eunice then reached to get another Wizard refill. She took one or two steps back and her right foot slid. Her right leg slipped out from under her and she landed on her right hip. A customer witnessed the fall and helped Eunice get up. As Eunice was getting off the tile floor, she placed both hands on the tile floor to lift her weight. She then rubbed her hands together and noticed that she had glass on them. She also noticed a "slimy mucus gob" of something on her hands. The slimy, oily substance made a saucer sized stain in the right side of her jeans. Eunice also noticed an oily spot on the right part of her knee and on her shoes.

After being assisted to her feet by the customer, Eunice looked at the floor and noticed an

oily substance covering four to five tiles.[1] The foreign substance was clear. Eunice did not remember seeing any dirt, debris, footprints, or shopping cart tracks in the foreign substance. The glass on her hands was also clear and did not have any dirt on it. Eunice recognized the smell of the substance as being Wizard "Crisp Breeze" potpourri refill. She did not see any packaging for the Wizard refill on the floor. She did not see anything dripping off the shelf. There was nothing in the aisle to prevent her from seeing the slimy, oily substance.

Wal-Mart has a store policy requiring general sweeps of the entire store by all employees at 8:00 A.M., 11:00 A.M., 3:00 P.M., and 7:00 P.M. Wal-Mart also has a "zoning" policy requiring associates to inspect their areas every thirty minutes. Kendrick Swain ("Swain") was the assistant manager assigned to the area covering the cat food/potpourri aisle on the afternoon in question. He reported to work at 10:00 A.M. and inspected his assigned area. Between 10:00 A.M. and 4:00 P.M. Swain walked his area approximately twenty times. Swain walked the aisle in question during the 11:00 A.M. general sweep. He did not notice a foreign substance on the floor. Swain did not walk down the aisle on which Eunice fell during the 3:00 P.M. general sweep. According to Swain, he did not inspect the aisle between 3:00 P.M. and 4:00 P.M. Swain's best estimate regarding the last time he inspected the aisle was somewhere between 1:00 P.M. and 3:00 P.M. During this period Swain did not notice a foreign substance on the floor. There was no written report made after the 3:00 P.M. general sweep indicating a spill on the aisle.[2]

---

[1] Each tile is one foot by one foot.

[2] According to Swain, Wal-Mart's policy regarding reports concerning spills is that a report is only filled out when a customer slips and falls. The employees are not required to fill out a report if they notice and cleanup a spill prior to an accident. According to Wal-Mart, there is no report indicating a spill on the aisle on Saturday, January 27, 2001.

**DISPUTED FACTS**

According to Eunice, the customer that helped her up went to find a Wal-Mart employee to report the fall. Eunice waited in the aisle for a couple of minutes. The customer returned to the aisle with Swain. Eunice states that she showed Swain her hands and explained the fall. She claims that the oily, slimy substance was still on the floor when Swain came to meet her. According to Eunice, Swain stated that he could see the spill. Eunice asserts that Swain requested that she come with him to fill out some forms. She followed Swain to the back of the store and sat on a bench pursuant to Swain's instructions. At this point, Eunice noticed a white gentleman standing there with a mop and bucket. According to Eunice, the gentleman informed her that he had gotten notice about a spill, and that he had not gotten around to cleaning it up. He did not say where the spill was located or that it was a Wizard scented oil spill. Eunice does not know how long he had known about the spill prior to their conversation.

Eunice waited about ten minutes before Swain returned with the forms. She then filled out an accident report. According to Swain she was wearing tennis shoes when the accident occurred. However, the notation on the accident report indicates that she was wearing "hard bottom boots."[3] Eunice went and paid for her groceries and left the store after finishing filling out the accident report.

According to Swain, Eunice came to the front of the store and informed him that there was some glass on the floor and that she had slipped and fallen. Swain immediately left the front of the store and returned to the aisle with Eunice. He could see the glass on the floor. He then personally cleaned the area after the accident and the floor was dry. He only cleaned up little

---

[3] Swain was not able to explain the discrepancy in the footwear. He stated that he did not enter the information Eunice provided on the accident report into WalMart's computer system.

4

pieces of glass. After cleaning the floor, Swain left to go get an accident report form. He returned to the aisle and had Eunice fill out the form there. At no point did Swain walk to the back of the store with Eunice. He did not see the greasy spot on her hip, the greasy spot on her knee or any glass on her hands. Swain also asserts that he did not see a oily, mucous substance on the floor. According to Swain, he did not go to the back of the store with Eunice.

On October 30, 2001, Eunice filed a civil action against Wal-Mart in the Circuit Court of Calhoun County, Alabama. In her complaint, Eunice alleged that Wal-Mart negligently and/or wantonly maintained its premises. On December 7, 2001, Wal-Mart removed the action to this court pursuant to 28 U.S.C. §§ 1441 and 1446. This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332. On December 18, 2001, Eunice filed a motion to strike the willful or wanton allegations from her complaint. This motion was granted on December 19, 2001. Thus, the only claim remaining for resolution is the negligence claim.

## ARGUMENTS

Wal-Mart argues that it is entitled to summary judgment because it did not have notice of the alleged spill prior to the accident. According to Wal-Mart, a plaintiff must prove the following elements to recover in a premises-liability action based on a fall: (1) that the fall was caused by a defect or instrumentality located on the defendant's premises, (2) that the fall was the result of the defendant's negligence, and (3) that the defendant had or should have had notice of the defect or instrumentality before the accident. *See Logan v. Winn-Dixie Atlanta, Inc.*, 594 So. 2d 83, 84 (Ala. 1992). Wal-Mart argues that Eunice's alleged conversation with the maintenance worker does not constitute evidence of actual notice. It notes that Eunice testified that she had no idea what spill the individual was talking about or where it was located. It claims that in a large self-service store there could have been spills anywhere in the store. Wal-

Mart concludes that for Eunice to be able to demonstrate actual notice, she must demonstrate that Wal-Mart had actual notice of the spill which caused the fall.

Wal-Mart next argues that Eunice has not demonstrated that it had constructive notice of the spill. It notes that in some case the trier of fact can infer the length of time a substance has been on the floor by the nature and condition of the foreign substance. *See Foodtown Stores, Inc. v. Patterson*, 213 So. 2d 211 (Ala. 1968). Wal-Mart claims that Eunice's testimony concerning the nature and condition of the substance does not indicate that it had been on the floor any length of time. Wal-Mart asserts that Eunice stated that the substance was clear and had no dirt in it. It notes that she could not recall seeing any shopping cart tracks, any type of debris or any footsteps in the substance. Furthermore, it contends that there was no dirt in the glass. Wal-Mart claims that the chemical department is a high traffic department, and, consequently, the substance would have reflected some traffic if it had been on the floor any length of time. It further notes that Eunice testified that nothing prevented her from seeing the substance on the floor had she chosen to look. Based on this testimony, Wal-Mart claims that there is no evidence that it had constructive notice of the foreign substance being on the floor. Since there is no evidence of actual or constructive notice, Wal-Mart argues, summary judgment as a matter of law with respect to the negligence claim is due to be granted in its favor.

In response Eunice argues that she has presented sufficient evidence to establish a genuine issue of material fact on the issue of notice. According to Eunice, a store customer in a slip and fall case can present a jury question and withstand a motion for summary judgment by proving: (1) that the substance slipped upon had been on the floor a sufficient length of time to impute constructive notice to the store-keeper, or (2) that the store-keeper had actual notice that the substance was on the floor, or (3) that the store-keeper was delinquent in not discovering and

removing the substance. *See Maddox v. K-Mart Corp.*, 565 So. 2d 14 (Ala. 1990). Eunice argues that her testimony and Swain's testimony elicit facts sufficient to create a genuine issue regarding whether Wal-Mart had constructive notice, actual notice or was delinquent in not noticing the foreign substance on its floor.

Addressing the issue of constructive notice, Eunice argues that the following facts are pertinent. Eunice states that she was in the store approximately one hour before she slipped and fell. During this time she did not hear any notice on the P.A. system requesting a clean up on any aisle. Furthermore, she notes that she was on the aisle in question for at least fifteen minutes prior to the accident. She did not see anyone knock or spill anything into the aisle, heard no glass break, smelled nothing and saw no employee attempt to clean up the spill. Eunice also asserts that if the maintenance man did receive notice of a spill, he did not get around to cleaning it up for at least fifteen minutes. She further notes that no Wal-Mart employee checked the area between Swain's 1:00-3:00 P.M. sweep through her fall at 4:00 P.M. Additionally, Eunice conducted an experiment with the Wizard "Crisp Breeze" oil refill.[4] She spilled the product on her tile kitchen floor. After thirty-five minutes of being exposed to the air the oil attained the slimy, mucous condition it exhibited on her hands. The substance maintained this condition for another twenty-five minutes. Based on the facts elicited through the testimony of Eunice and Swain and the experiment conducted by Eunice, she claims that the foreign substance was on the

---

[4] Eunice discusses the experiment in her affidavit:

> After my fall, I purchased another refill at Wal-Mart and, as instructed by my attorney, poured it on my kitchen tile at room temperature between 62-68 degrees. I permitted no contamination. After thirty-five minutes, it attained the "snotty" condition and remained constant. Soap and water made the "test spot" only more slippery. After much effort, the "test spot" was cleaned up with a dry cloth and elbow grease.

(Affidavit of Myra Eunice at 3).

floor a sufficient length of time to impute constructive notice to Wal-Mart.

Eunice also argues that she has presented evidence creating a genuine issue of material fact on the issue of actual notice. In support of this proposition, she states that a Wal-Mart maintenance worker informed her after her accident that he had gotten a report of the aisle spill but had not gotten around to cleaning it up. She states that Wal-Mart has no record of any spills in the store that day. Thus, she claims that Wal-Mart should not be able to suggest that there may have been another spill in the store that the maintenance worker was referencing.

Finally, Eunice argues that the evidence raises a legitimate inference that the spill could have occurred between 3:00 and 4:00 P.M., and that Wal-Mart was negligent and delinquent in not discovering and removing the substance. Eunice notes that Swain did not check the aisle during the 3:00 P.M. general sweep of the store. She also notes that Swain did not know if any Wal-Mart employee checked the aisle between 3:00 and 4:00 P.M. There are no reports of a spill on the aisle. The broken glass and oil were foreign substances that should not have been on the floor. The glass covered a four to five tile area. The packaging that the Wizard oil refill came in was not found in the aisle. Finally, Eunice asserts that her home experiment demonstrates that the substance would need to be exposed to air thirty-five minutes in order for it to exhibit the condition that she found it to be in when she slipped and fell.

In reply Wal-Mart argues that Eunice has not raised a genuine issue of material fact as to the issue of notice. It reiterates that the maintenance worker did not specifically tell Eunice that he received notice of the spill that caused the incident. Thus, it did not have actual notice. As for constructive notice, it argues that the evidence indicates that approximately every thirty minutes, store associates are instructed via the P.A. system to zone their departments and make sure the floors are clean. Consequently, it claims that an employee would have inspected the

area between 3:00 and 4:00 P.M., even if Swain did not examine the aisle during this time. Furthermore, Wal-Mart asserts that negligence cannot be presumed simply because there is an injury to an invitee. It states that it is not the insurer of safety of customers on its premises. *See Ex parte Mountain Top Indoor Flea Market*, 699 So. 2d 158 (Ala. 1997). Consequently, it claims that Eunice must still prove actual or constructive notice to proceed to a jury. Finally, it notes that Eunice's testimony reveals that the liquid could not have been the floor for any length of time. It notes that the area was highly traveled. However, Eunice stated that the substance was clear, did not contain any dirt, debris, footprints or shopping cart tracks. Wal-Mart claims that if the oily substance had been on the floor any length of time, it would have reflected some type of traffic.

Wal-Mart also moves to strike certain portions of Eunice's affidavit. It claims that her statements regarding the alleged "experiment" in her kitchen are due to be stricken pursuant to Rules 402 and 403 of the Federal Rules of Evidence. It argues that the "experiment" has no relevance to the issue of whether it had actual or constructive notice. Even if it had minimal relevance, Wal-Mart contends that the dissimilarity between the conditions of the "experiment" and the conditions at the time of the incident render the testimony prejudicial if considered by the court. Wal-Mart moves to strike the attachment to the affidavit because it does not constitute "sworn or certified copies of all papers or parts thereof referred to in an affidavit" in compliance with Rule 56(e) of the Federal Rules of Civil Procedure. It also moves to strike any testimony based on what occurred after the incident when Eunice returned to Wal-Mart. Wal-Mart claims that this testimony is irrelevant, and, if relevant, is prejudicial. Finally, Wal-Mart moves to strike the following portion of Eunice's affidavit:

> The "mucusy" condition the Wizard scented oil refill was in when I fell, the fact

> that nothing was spilled during the 15 minutes I actually shopped in this aisle, the custodian's assertion that he had gotten the report of an aisle spill but hadn't gotten around to it, the lack of any "sweep" or check by Wal-Mart associates from 3:00-4:00 p.m. all indicate that there was an "accident waiting to happen" and that it was I who unfortunately was destined to play a role to play [sic] in it.

(Affidavit of Myra Eunice at 5). It claims that this portion of the affidavit is due to be stricken because it is argument in affidavit form which does not constitute "such facts as would be admissible as evidence" as required by Rule 56(e) of the Federal Rules of Civil Procedure.

## MOTION FOR SUMMARY JUDGMENT STANDARD

Summary judgment may be granted based upon facts developed during the pleadings, discovery, and supplemental affidavits, etc., if together, they show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party moving for summary judgment bears the initial burden of explaining the basis of his motion. *Id.* The non-moving party then bears the burden of showing that there are specific facts demonstrating that there is a genuine issue of fact for trial. *Id.* at 324. "When deciding whether summary judgment is appropriate, all evidence and reasonable factual inferences drawn therefrom are reviewed in a light most favorable to the non-moving party." *Korman v. HBC Florida, Inc.*, 182 F.3d 1291, 1293 (11th Cir. 1999). The trial court must resolve all reasonable doubts in favor of the non-moving party, but need not resolve all doubts in a similar fashion. *Barnes v. Southwest Forest Indus., Inc.*, 814 F.2d 607, 609 (11th Cir. 1987).

## CONCLUSIONS OF THE COURT

At best, this is a close case. As presented by the plaintiff it is a weak case which barely survives summary judgment. While the defendant has not argued that the alleged statement of the maintenance worker is hearsay, see *Wilkinson v. Carnival Cruise Lines, Inc.*, 920 F.2d 1560 (11th Cir. 1991). The court will deny the motion, but will carefully scrutinize the evidence at trial.

This 23rd day of April 2002.

ROBERT B. PROPST
SENIOR UNITED STATES DISTRICT JUDGE